PER CURIAM.[1]
This is an appeal by a former husband, from a final judgment entered by a Florida court in an action solely concerned with the custody of the parties’ seven year old daughter, a Louisiana court having previously dissolved the marriage. We affirm.
Appellant contends that the trial court abused its discretion by (1) not accepting the opinion of a psychologist retained by appellant to the effect that the parties’ child should remain with appellant; (2) transferring primary residential care of the child from the father to the mother; and (3) refusing to order a psychiatric examination of the mother. We conclude that the trial judge did not abuse his discretion in any respect.
Competent evidence in the record establishes that in 1979, when the parties’ daughter was three years of age and the parties were residing in Louisiana as man and wife, appellant met another woman, who lived in Florida, commenced an affair with her and devised a scheme whereby he would remove the parties’ child from Louisiana and take up residence in Florida with the other woman while concealing the child’s whereabouts from the mother, who was abandoned without her child, funds, employment, to say nothing of transportation. Fortunately, appellee’s parents were alive, well and residing in Louisiana. The other woman became guilt-ridden and informed appellee of her child’s whereabouts. For the next two years, appellee was able to see her daughter in a car for a few minutes here in the spring of 1980, and for two days in early 1982.
Most important, there was ample evidence to substantiate placing the child in the primary residential care of appellee, who had proven herself to be strong by handling this traumatic rejection, abandonment, deceit and concealment without crumbling and without weakening of her resolve to be reunited with her child. Instead of retreating to a psychiatrist’s couch from and after this episode, notwithstanding her having been hospitalized in 1968 and 1969 for a serious psychiatric reason, she resided in her parent’s home, ultimately obtained a civil service position, took college level courses, attended church and maintained a very low social profile while engaged in two legal battles with appellant in the two states. The evidence further revealed that the child would attend school close to her new residence in Louisiana, would return home where her maternal grandmother would be present, thus eliminating the probability of any “latchkey” problem. The trial court apparently found no reason to believe the mother, who had been a caring, responsible mother who maintained the marital home during the child’s first three years, would depart from that caring and responsibility. Accordingly, there was sufficient record support for the trial court’s following recitation in the final judgment:
The court has concluded that the greater weight of the evidence does not support the Petitioner’s affirmative assertion, that the Respondent-Mother is presently not psychologically, socially or physically capable of rendering the necessary and best care to the said minor child.
Based upon the greater weight of the evidence and considering the best interests of the minor female child, LORI, now age six years, the court finds that her parents should have shared parental custodial responsibility and that NANCY ALEXANDER FRISARD should have the primary residential care of the minor, LORI CHARLENE FRISARD, at the end of the present 1983 school term.
*1152 Similarly, the record supported the following findings and conclusions of the trial court as to the psychologist retained by the husband:
The court has observed the parties and notes that their testimony portrays their sincere desire to each have custody and the primary residential care of their minor, LORI. DR. GREENBAUM, a psychologist, testified that he believed that LARRY C. FRISARD was the most supportive and thus the best parent to have custody of the minor. Upon questioning by the court, DR. GREENBAUM necessarily admitted that he had no opportunity to interview the mother, NANCY ALEXANDER FRISARD, and he acknowledge that the father, LARRY C. FRI-SARD, would register as the more supportive parent under the circumstances, which now indicated that the mother’s contact with the minor had been thwarted or denied by the father for the past three years in the six year life of the minor daughter.
The final issue raised by appellant is without merit for a number of reasons. First, his motion sought appointment of a psychiatrist to examine appellee based upon reference to her hospitalization and her refusal to disclose the details of same. Appellant’s appendix reflects her disclosure of the details, which were ancient history. There was not only no evidence of any psychiatric nor psychological problem or treatment therefor after 1969, but most important, as we recited earlier, the strength and ability to function on appel-lee’s part during the critical years of separation and uncertainty (1980-1983) was un-contradicted. Appellant’s motion was denied without prejudice; and his renewed motion during the trial, based on the earlier history, did not result in the trial court’s abuse of discretion by its refusal to have appellee examined. Mental or psychological examinations are not automatic, and should not be. First, these clearly are not always warranted, as in the case here; therefore, court appointment is unjustified. See Florida Rule of Civil Procedure 1.360(a) concerning the requirement of a “good cause” showing, and Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). Second, the cost may be an unnecessary burden on the parties.
The judgment on appeal is AFFIRMED.
HERSEY and WALDEN, JJ., concur.
GLICKSTEIN, J., specially concurs with opinion.

. This opinion was prepared by Glickstein, J.